```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
BRACH FAMILY FOUNDATION, INC.,                                          :
                                                                        :         16-CV-740 (JMF)
                                        Plaintiff,                      :
                                                                        :         OPINION AND ORDER
                -v-                                                     :
                                                                        :
AXA EQUITABLE LIFE INSURANCE COMPANY,                                   :
                                                                        :
                                        Defendant.                      :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this putative class action, the Brach Family Foundation, Inc. (the "Brach Foundation") sues Defendant AXA Equitable Life Insurance Company ("AXA"), alleging that, by increasing the cost of insurance ("COI") for a group of life insurance policyholders, AXA both breached the terms of its insurance policies and made material misrepresentations in violation of Section 4226 of the New York Insurance Law.  (Docket No. 28 ("FAC") ¶ 1).  AXA now moves, pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint (the "Complaint") in its entirety.  (Docket No. 30; *see also* Docket No. 31 ("Def.'s Mem.")).  For the reasons that follow, the Court denies AXA's motion as to the breach-of-contract claim, but grants it as to the Section 4226 claim and gives the Brach Foundation leave to file a second amended complaint.

## BACKGROUND

The following facts — which are taken from the Complaint, documents it incorporates, and matters of which the Court may take judicial notice — are construed in the light most favorable to the Brach Foundation.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

The Brach Foundation, a New York not-for-profit corporation, owns a life insurance contract issued by AXA on a standard form called Athena Universal Life II ("AUL II"). (FAC ¶¶ 2, 10, 11; Docket No. 1 ("Compl."), at Ex. A ("Doe Policy")). AUL II policies are flexible-premium universal life policies, under which a policyholder is required to make an initial premium payment and, thereafter, can choose when and how much to pay in premiums. (FAC ¶ 2, 15-17). Premiums are placed in a policyholder's Policy Account — the functional equivalent of a savings account — from which AXA deducts COI and administrative charges on a monthly basis. (*Id.*). If the Policy Account is insufficient to cover the monthly charges, the policy will lapse (absent a no-lapse guarantee); the policyholder earns interest on any funds in the Policy Account. (*Id.* ¶¶ 2, 5, 16). Upon the insured's death, AXA pays the policy beneficiary the specified death benefit, also known as the face amount of the policy. (Doe Policy 3, 5-6). In the case of the Brach Foundation, the policy — issued in 2007 — has a face amount of $20 million and was issued on the life of a woman who was eighty-one-years-old at the time. (FAC ¶ 10; Doe Policy 3).

Significantly, under the terms of the AUL II policies, AXA is permitted, subject to certain restrictions, to change the COI — which is typically the largest expense that a policyholder has to pay. (FAC ¶ 17; *see also* Doe Policy 3 ("WE HAVE THE RIGHT TO CHANGE THE AMOUNT OF INTEREST CREDITED TO THE POLICY AND THE AMOUNT OF COST OF INSURANCE OR OTHER EXPENSE CHARGES DEDUCTED UNDER THE POLICY WHICH MAY REQUIRE MORE PREMIUM TO BE PAID THAN WAS ILLUSTRATED OR CAUSE THE CASH VALUES TO BE LESS THAN ILLUSTRATED.")). The AUL II policies, however, contain a "Changes in Policy Cost Factors" provision, which states that changes in COI

> will be on a basis that is equitable to all policyholders of a given class, and will be determined based on reasonable assumptions as to expenses, mortality, policy and contract claims, taxes, investment income, and lapses. Any change in policy cost

>factors will never result in . . . policy charges that exceed the maximum policy charges guaranteed in the policy.  Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

(Doe Policy 11).  According to the Complaint, the terms of all AUL II policies are identical, and prospective policyholders may not negotiate over a policy's terms.  (FAC ¶ 20).

In February 2015, AXA represented in a public filing that it had not observed any changes in "experience factors," including mortality, "underlying any nonguaranteed elements" such as COI.  (FAC ¶¶ 9, 48).  In October 2015, however, AXA announced that, effective March 8, 2016, it would be increasing COI rates for any AUL II policy with (1) an issue age (that is, the age of the insured at the time of policy issuance) of seventy years or older and (2) a face value of one million dollars or more — a change that affected the Brach Foundation policy and approximately 1,700 other policies.  (*Id.* ¶¶ 3, 21).  AXA publicly stated that the increase was warranted because the company "expects future mortality and investment experience to be less favorable than what was anticipated when the current schedule of COI rates was established." (*Id.* ¶¶ 7, 22).[1]  On February 1, 2016, the Brach Foundation filed a putative class action complaint, alleging that AXA had breached the terms of the AUL II policies.  (Compl. ¶¶ 51-57).  After AXA moved to dismiss the original complaint (Docket No. 18), the Brach Foundation filed the operative Complaint, alleging both breach-of-contract claims and a claim under Section 4226 of the New York Insurance Law.  (FAC ¶¶ 72-80).

---

[1] AXA relies heavily on an October 5, 2015 letter it received from the New York State Department of Financial Services ("DFS"), in which DFS stated that the insurer's proposal to increase the COI was "unobjectionable." (Def.'s Mem. 6).  Whether or not DFS's letter is the sort of government document of which the Court could take judicial notice — an issue in dispute (*compare* Def.'s Mem. 6 n.11, *with* Docket No. 49 ("Pl.'s Opp'n") 4-5) — assessment of the letter's import would require knowledge and consideration of materials the Court may not consider on a motion to dismiss, including the nature and extent of DFS's inquiry and the standards it applied.  In light of that, the Court declines to put any weight on the DFS letter, and need not resolve at this stage of the litigation whether it is a matter of which the Court can take judicial notice.

**LEGAL STANDARDS**

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (alterations in original). The Court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

With respect to claims alleging fraud, Rule 9(b) imposes a heightened pleading standard. *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012). Specifically, such claims must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). That is, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted). Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

## DISCUSSION

As noted, the Brach Foundation sues for breach of contract and violation of Section 4226 of the New York Insurance Law. The Court will address each in turn.

### A. Breach of Contract

The Brach Foundation alleges that AXA breached the terms of the insurance policy in several different respects: first, by singling out a subset of all policy holders in violation of the provision stating that changes in COI "will be on a basis that is equitable to all policyholders of a given class" (FAC ¶¶ 24-25, 68(a); Doe Policy 11); second, by increasing the COI based on either "unreasonable assumptions" about mortality or investment income or factors not set forth in the "Changes in Policy Cost Factors" provision (FAC ¶¶ 38-39, 68(b)-(c); Doe Policy 11); and third, on the ground that the increase in the COI was not "determined in accordance with procedures and standards on file . . . with" New York's "insurance supervisory official." (FAC ¶ 53-55; Doe Policy 11). AXA contends that none of these theories is "legally cognizable" (Def.'s Mem. 2), but its arguments are easily rejected at this stage of the litigation.

AXA's contentions with respect to the first theory ultimately turn on the meaning of "class" in the "Changes in Policy Cost Factors" provision of the contract. The Brach Foundation contends that "class" refers to all AUL II policyholders, in which case AXA obviously did not treat all policyholders of the class equitably, as it raised the COI for only a subset of the class — namely, AUL II policies with issue ages of seventy years or older and a face value of one million dollars or more. (FAC ¶ 31; Def.'s Mem 20-23). By contrast, AXA contends that the relevant "class" is limited to that subset. (Def.'s Mem. 6, 20-22). At best, however, the term is ambiguous, and therefore the issue cannot be resolved against the Brach Foundation on a motion to dismiss. *See, e.g.*, *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the

5

pleadings."); *see also, e.g.*, *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (noting that if the policy language is ambiguous, "the ambiguity must be interpreted in favor of the insured and against the insurer"); *cf. Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 481-82 (S.D.N.Y. 2014) (denying summary judgment in similar circumstances based, in part, on competing expert opinions about the meaning of "class").

AXA's arguments with respect to the second and third theories ignore the allegations in the Complaint. With respect to the second theory, the "Changes in Policy Cost Factors" provision provides that COI increases can be based only on "reasonable assumptions" as to certain enumerated factors. The Brach Foundation plausibly alleges that AXA breached that provision either (1) because its assumptions about mortality and investment experience — the only two factors cited by AXA itself in justifying the increase (FAC ¶ 22) — were unreasonable (*see id.* ¶ 40 (alleging that mortality rates had "only gotten *better* over time"); *id.* ¶ 50 (alleging that "changes in investment income, if any, are a minor factor which . . . would not justify the size and scale of the COI increase")); or (2) insofar as mortality and investment experience would not have justified a COI increase of the size imposed, because AXA based the COI increases on other, unenumerated factors.[2] With respect to the third theory, the Complaint alleges that AXA failed to comply with "numerous regulations and standards on file" in New York and cites as a specific example model laws promulgated by the National Association of Insurance Commissioners prohibiting unfair discrimination within a class. (FAC ¶¶ 53-55).

---

[2] AXA interprets the Complaint to allege, as another theory of breach, that the company's "original" assumptions were unreasonable. (Def.'s Mem. 18-20). Notwithstanding language in the Complaint that could be read to press that theory, the Brach Foundation appears to disclaim the theory in its memorandum of law opposing AXA's motion (Pl.'s Opp'n 15-16), so the Court will not treat it as a separate theory here. To the extent that the Complaint does press the theory, the claim would be subject to dismissal on any or all of the following grounds: abandonment, untimeliness, and failure to state a claim. (*See* Def.'s Mem. 18-20).

Although AXA contends that the model law is not a "procedure" or "standard" required to be on file (Def.'s Mem. 16-17), the Complaint alleges that it has been adopted by New York, is "on file with the regulator," and prohibits a discriminatory COI increase. (FAC ¶¶ 53-55). Those allegations, when taken together (and assumed to be true), are sufficient to state a claim for relief that is facially plausible. *See Twombly*, 550 U.S. at 570.

**B. New York Insurance Law Section 4226**

The Court turns, then, to the Brach Foundation's claim under Section 4226 of the New York Insurance Law. That statute makes it unlawful for an insurer to "issue or circulate . . . any illustration, circular, statement or memorandum misrepresenting the terms, benefits or advantages of any of its policies or contracts," or to "make any misleading representation, or any misrepresentation of the financial condition of any such insurer or of the legal reserve system upon which it operates." N.Y. Ins. L. § 4226(a)(1), (4). An insurer that "knowingly violates" the statute, or "knowingly receives any premium or other compensation in consequence of such violation shall," among other things, be liable to "any person aggrieved" for "a penalty in the amount of such premium or compensation." *Id.* § 4226(d). The Brach Foundation alleges that, if AXA's justifications for its COI hike are to be believed, then the insurer knowingly filed false interrogatories with regulators, misrepresented its financial condition, and issued illustrations and annual statements that misrepresented the advantages of its AUL II policies. (FAC ¶¶ 9, 73-78). But for those misrepresentations, the Complaint alleges, policyholders would either not have bought their policies at all or, if purchased on the secondary market, "would have paid much less" for them or allowed them to lapse. (*Id.* ¶ 78). Further, the value of the policies "has been substantially diminished by the material misrepresentations and new COI rate increases." (*Id.*).

AXA's first argument for dismissal — that the Court lacks jurisdiction because the Brach Foundation lacks standing to bring a Section 4226 claim (Def.'s Mem. 7-10) — must be addressed first, *see, e.g.*, *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 431

(S.D.N.Y. 2015), but is easily rejected. To survive a motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest" that it "suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Here, the Complaint does so, as it explicitly alleges that AXA's allegedly false and misleading statements induced policyholders to buy policies that they would not otherwise have bought (or to pay more for those policies), caused policyholders to continue funding their policies rather than letting them lapse, and resulted in a decline in the policies' value. (FAC ¶ 78).[3] Those allegations suffice at this stage of the litigation, *see, e.g.*, *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 777 (S.D.N.Y. 2012) (denying a motion to dismiss for lack of standing on the ground that the plaintiffs had alleged an "injury (a decline in their Certificates' value) traceable to a single, allegedly unlawful act by Defendants (disseminating Offering Documents with misrepresentations and omissions)"), and distinguish this case from *Ross*, upon which AXA relies (Def.'s Mem. 7-9), as the plaintiffs there failed to allege, as the Brach Foundation does here, "that they would not have purchased policies from AXA but for its nondisclosures, or that they suffer any past or current financial harm by virtue of its misrepresentations," *Ross*, 115 F. Supp. 2d at 437.

Many of AXA's remaining arguments — for example, that the Brach Foundation is not a "person aggrieved" within the meaning of Section 4226 and fails to allege a plausible theory of injury (Def.'s Mem. 7-9) — are simply repackaged versions of its standing arguments and fail

---

[3]  One of AXA's arguments — that the Brach Foundation's allegations fall short because they refer to the harms caused to "policyholders" and "policy owners" generally rather than to the Brach Foundation specifically (Def.'s Mem. 9) — is not without some force. Nevertheless, insofar as the Complaint alleges that the value of all affected policies "has been substantially diminished" by AXA's conduct, and the Brach Foundation owns an affected policy, its allegations are sufficient at this stage of the litigation. (FAC ¶ 78).

for the same reasons. The Court finds merit, however, in AXA's argument that the Section 4226 claim fails to satisfy the heightened pleading requirements of Rule 9(b). (*Id.* at 11-14). For starters, the Court agrees with AXA that Rule 9(b) applies to the Brach Foundation's Section 4226 claim. It is true, as the Brach Foundation emphasizes (Pl.'s Opp'n 22), that Section 4226 does not explicitly require proof of fraudulent intent. *See* N.Y. Ins. Law § 4226(a), (d). As AXA notes, however, the statute does require "knowledge of the falsity of its representation," which "connotes 'scienter' and thus 'fraud.'" (Def.'s Mem. 11 n.15; Def.'s Reply 3). And regardless, the Brach Foundation's allegations here sound in fraud (indeed, it explicitly alleges "fraudulent concealment" (FAC ¶ 23)). In such circumstances, this Court and others have held that Rule 9(b) applies. *See, e.g.*, *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342, 368 (S.D.N.Y. 2015); *BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*, No. 13 CIV. 0638 (JMF), 2013 WL 6003701, at *3 (S.D.N.Y. Nov. 13, 2013), *aff'd in relevant part by* 603 F. App'x 57, 58 (2d Cir. 2015); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y 2011); *Naughright v. Weiss*, No. 10 Civ. 8451(RWS), 2011 WL 5835047, at *7 (S.D.N.Y. Nov. 18, 2011). The Court reaches the same conclusion here.

The Brach Foundation's Section 4226 claim fails to satisfy Rule 9(b) for one simple reason: Although the Complaint alleges that AXA issued and circulated false or misleading "illustrations and annual statements" and filed false or misleading "interrogatories" with its regulators, it fails to identify any *specific* illustration, annual statement, or interrogatory. (FAC ¶¶ 73-77). Rule 9(b) requires more. *See, e.g.*, *Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006 (JMF), 2015 WL 3540836, at *11 (S.D.N.Y. June 5, 2015) (dismissing a claim under Rule 9(b) where the complaint included "a few examples of various marketing materials containing" false or misleading statements, but included "virtually no details as to when and where those materials were disseminated" and "no specific information about when" certain mandatory "regular reports

. . . were sent" by the defendant to its accreditor); *United States v. All Right, Title & Interest in Real Prop. & Appurtenances Thereto Known as 35-37 E. Broadway, N.Y., N.Y. 10002 Listed as Block 280, Lot 42 in Office of Cnty. Clerk & Register of N.Y. Cnty., N.Y.*, No. 12-CV-4034 (HB), 2013 WL 4006073, at *6 (S.D.N.Y. Aug. 6, 2013) (holding that allegations that fraudulent representations occurred "[d]uring or about the summer of 2008" were insufficient under Rule 9(b)); *see also DeFazio v. Wallis*, 500 F. Supp. 2d 197, 206 (E.D.N.Y.2007) (finding the plaintiff's claims of fraudulent mailings failed under Rule 9(b) because they did "not explain what the [fraudulent] forms are; what information they contained; when the documents were mailed; or who sent them"). Accordingly, the Section 4226 claim must be and is dismissed.[4]

## CONCLUSION

For the reasons stated above, AXA's motion to dismiss is DENIED as to the Brach Foundation's contract claim, but GRANTED as to its Section 4226 claim. The Court, however, grants the Brach Foundation leave to amend its complaint to address the deficiencies in its Section 4226 claim. For starters, "where [a] complaint is deficient under Rule 9(b), leave to amend is usually afforded." *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 669 (2d Cir. 1989) (internal quotation marks omitted). On top of that, although the Brach Foundation amended its complaint after AXA's first motion to dismiss (Docket Nos. 18, 19, and 21; FAC), that first complaint did not include a claim under Section 4226. (Compl. ¶¶ 51-57). Thus, this is not a case where there is a "repeated failure to cure deficiencies by amendments previously allowed." *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 319 (S.D.N.Y. 2005) (internal quotation marks omitted), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110

---

[4] To the extent that AXA makes other Rule 9(b) arguments — for example, that the Complaint fails to sufficiently allege knowledge of wrongdoing (Def.'s Mem. 14) — the Court finds them to be without merit. The Complaint explicitly alleges that AXA "repriced the program five times" beginning in 2007 and, thus, "knew about [the] alleged profitability shortfall for years, but . . . continued to provide illustrations and annual statements that were materially misleading." (FAC ¶ 74).

(2d Cir. 2007); *see also Sanchez*, 2015 WL 3540836, at *13-14 (allowing leave to amend to address Rule 9(b) deficiencies even where the defendant's motion to dismiss an earlier complaint had raised the issue).

Accordingly, the Brach Foundation is hereby given leave to file a second amended complaint within four weeks of the date of this Opinion and Order; the Brach Foundation will not be given any further opportunity to amend to address the defects addressed in this Opinion and Order. If the Brach Foundation does amend, AXA shall have three weeks in which to respond to the new complaint. If the Brach Foundation does not amend, AXA shall file its answer (with respect to the contract claim) within three weeks of the deadline passing.[5]

The Clerk of Court is directed to terminate Docket No. 30.

SO ORDERED.

Dated: December 19, 2016
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5] Although not raised by either party, the allegations in the Complaint are arguably insufficient to establish that this Court has subject-matter jurisdiction. The Complaint alleges that the Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), "because this is a class action with diversity between at least one class member and one defendant" (FAC ¶ 12), but it does not appear to identify any class member to support that conclusory allegation. (The Brach Foundation and AXA are both citizens of New York, *see id.* ¶¶ 10, 11). Given the nature of the allegations in this case, it is fair to assume that there is at least putative class member who is a citizen of another state, but — insofar as it is the plaintiff's burden to plausibly allege facts that establish federal subject-matter jurisdiction, *see, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) — the Brach Foundation should address the issue in the event it files a second amended complaint (and be prepared to address it in the event that it does not file a second amended complaint).