UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
IN RE:                                                  :    16-CV-740 (JMF)
                                                        :
AXA EQUITABLE LIFE INSURANCE COMPANY                    :    MEMORANDUM OPINION
COI LITIGATION                                          :    AND ORDER
                                                        :
*This Document Relates to LSH CO v. AXA Equitable Life* :
*Insurance Company*, No. 18-CV-2111 (JMF).              :
                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/30/2018

JESSE M. FURMAN, United States District Judge:

In this putative class action, familiarity with which is presumed, the Brach Family Foundation, Inc. ("Brach Foundation") alleges that, by increasing the cost of insurance ("COI") for a group of flexible-premium life insurance policyholders, Defendant AXA Equitable Life Insurance Company ("AXA") breached the terms of the policies at issue and made material misrepresentations in violation of Section 4226 of the New York Insurance Law. (Docket No. 71 ("SAC")). In a Memorandum Opinion and Order entered on November 3, 2017, the Court denied AXA's motion to dismiss the Section 4226 claim, concluding that the claim, as amended, pleaded fraud with sufficient particularity to meet the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure. (Docket No. 135 ("Opinion"), at 2-3). AXA now moves for reconsideration of the denial of its motion to dismiss the Section 4226 claim in the then-operative version of the complaint ("Second Amended Complaint").[1] For the reasons that follow, AXA's motion is DENIED.

---

[1] On March 9, 2018, the Court granted the Brach Foundation's motion to file a Third Amended Complaint, which added new Plaintiffs and new state law claims but did not materially alter the Second Amended Complaint for purposes of AXA's motion for reconsideration. (Docket No. 184; *see also* Docket No. 188). Because AXA's motion for reconsideration challenges a decision rendered with respect to the Second Amended Complaint, the Court will

Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (ellipsis omitted) (internal quotation marks omitted). "The major grounds justifying reconsiderations are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Reconsideration "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003)). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks omitted). Ultimately, "a district court has broad discretion in

---

refer to that iteration of the complaint in this Memorandum Opinion and Order. The Court's ruling applies, *a fortiori*, to the Section 4226 claim in the Third Amended Complaint.

determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

AXA's efforts to satisfy this stringent standard are not persuasive. First, contrary to AXA's assertions, the Court did not "overlook[] key documents that are dispositive" — namely, the illustrations attached to the Second Amended Complaint — in denying the motion to dismiss. (Docket No. 147 ("AXA Mem."), at 1). To the contrary, the Court scrutinized the illustrations and expressly cited them in its Opinion, and also considered allegations in the Second Amended Complaint that provided "detail as to the timing and nature of the allegedly fraudulent materials in question and . . . explain[ed] in depth their alleged import." (Opinion 2). Similarly, the Court remains unconvinced by AXA's contention that the illustrations contradict allegations in the Second Amended Complaint and therefore supersede those allegations. (AXA Mem. 3-6). It is true that documents appended to a complaint "control, and this Court need not accept as true" a complaint's allegations about the content of the documents to the extent that the allegations contradict the documents themselves. *Tongue v. Sanofi*, 816 F.3d 199, 206 (2d Cir. 2016). Yet where no such contradiction exists, the Court is otherwise required to rely on the allegations in the complaint as true. S*ee, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Here, the Court finds no inconsistency between the Brach Foundation's allegations about the content of the illustrations and the illustrations themselves. The "contradiction" AXA purports to identify is, rather, a dispute between the parties as to the validity of the Brach Foundation's gloss on the illustrations and its explanation of their import as an integral part of the alleged misrepresentations.

AXA's other principal argument is that the illustrations cannot be fraudulent as a matter of law in light of *Gaidon v. Guardian Life Insurance Company of America*, 725 N.E.2d 598

(N.Y. 1999), and related New York decisions. (AXA Mem. 6). But those cases do not compel reconsideration of the Opinion. The plaintiffs in *Gaidon* were policyholders who brought actions against insurance companies in connection with "vanishing premium" life insurance policies. The plaintiffs alleged that they had purchased the policies because of "false representations" by insurance representatives that the plaintiffs "would have to pay annual premiums out-of-pocket for only the first eight years of the policy" and that "the policy's dividends would thereafter cover the premium costs." *Id.* at 600. These alleged representations were made in conjunction with personalized illustrations for each plaintiff depicting a vanishing premium. *Id.* The plaintiffs claimed that the projected date upon which premiums would cease "was misleading, as based on the premise that interest rates would continue at a high, unprecedented rate for, in some cases, 20 or more years — a premise that defendants allegedly knew to be unlikely." *Id.* Plaintiffs challenging certain of the policies also contended "that the illustrations were premised on dividend projections that [the insurance company] knew or should have known were untenable" because the company had "artificially inflated [its] current dividend rates despite waning profits because [it] wanted to continue depicting competitive vanishing rates." *Id.* Yet the purportedly fraudulent illustrations were accompanied by disclaimers noting that the figures were based on the current year's dividend scale and that "[a]ctual future dividends m[ight] be higher or lower than those illustrated depending on the company's actual future experience," although the disclaimers did not explain the potential ramifications of higher or lower interest rates than those depicted. *Id.* at 601. The insurance policies that the plaintiffs ultimately signed similarly noted that the actual dividend would reflect the insurance companies' "mortality, expense, and investment experience." *Id.* Eight years after the sale of the policies, the plaintiffs were informed that their premiums would not vanish as expected and that they would be required

4

to continue their out-of-pocket premium payments. *Id.* They sued the insurance companies, alleging common law fraud and violations of New York General Business Law § 349.

The New York Court of Appeals ultimately permitted the plaintiffs' Section 349 claims to proceed but declined to allow the common law fraud claims. Although the plaintiffs' allegations that the "defendants lured them into purchasing policies by using illustrations that created unrealistic expectations as to the prospects of premium disappearance upon a strategically chosen 'vanishing date'" were sufficient to state a claim of deceptive business practices under Section 349, the Court concluded that the defendants' "partial disclosure" "that the illustrated dividend/interest rates are not guaranteed and that [the actual dividend] may be higher or lower than depicted" absolved the defendants of fraud. *Id.* at 604, 607-08. That is, the partial disclosure sufficiently revealed the possibility of an interest rate decline so as to overcome a fraud claim, even though it did not set forth the "practical implications" of such a decline to a less sophisticated policyholder. The defendants' omissions and representations, in light of the partial disclosures, were neither "so trifling as to be legally inconsequential," nor "so egregious as to be fraudulent, or even criminal." *Id.* at 607.

AXA cites *Gaidon* for the proposition that "there can be no fraud where illustrations reflect charges based on current rates and contain repeated disclaimers that rates can change," (AXA Mem. 6), but the Court does not read *Gaidon*'s holding so broadly. In any event, *Gaidon* does not require reconsideration of the Opinion because, contrary to AXA's suggestion, the Second Amended Complaint does more than allege that the illustrations falsely represented that they were based on AXA's internal assumptions. (AXA Mem. 5). Specifically, the Second Amended Complaint alleges a much more complex scheme of misrepresentation and omission, of which the artificially depressed COI rates reflected in the illustrations are only one part. The

5

Brach Foundation claims that AXA manipulated the factors on which its policy terms were meant to be based as part of a "bait and switch" aimed at misrepresenting the advantages of its policies and that AXA used the illustrations as a means of perpetuating this bait and switch. For instance, the Brach Foundation claims that AXA's original pricing "applied unreasonably extreme and aggressive haircuts to the 75-80 mortality table," in a manner "designed to make AXA's product look substantially cheaper than competitors' and gain market share." (SAC ¶ 73). According to the Second Amended Complaint, the illustrations AXA disseminated reflected those haircuts, resulting in illustrations that were materially misleading. The Brach Foundation further alleges that AXA had a $500 million shortfall in future best estimate cash flows and that it failed to "disclose any shortfall to policy owners in the annual illustrations" and, indeed, "continued to use the original pricing" without accounting for the shortfall, "thereby misrepresent[ing] its financial condition" in violation of Section 4226. (SAC ¶¶ 73-76). This alleged pattern of deliberate manipulation and concealment of internal information is distinct from the simple failure to explain the possible ramifications of interest rate changes in *Gaidon*.

In light of the foregoing, the Court need not and does not reach AXA's other arguments. Specifically, the Court declines to revisit its decision to defer judgment on whether the Brach Foundation can pursue a Section 4226 claim with respect to interrogatories it submitted to regulators and whether there is a private right of action under New York State Insurance Department Regulation 74. As the Court previously held, those issues do not "affect the bottom line" because "the Brach Foundation's Section 4226 claim . . . survive[s]." (Opinion 3).

For the foregoing reasons, AXA's motion for reconsideration is DENIED.[2] The Clerk of Court is directed to terminate 16-CV-740, Docket No. 146.

SO ORDERED.

Date: July 30, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[2] In a related case, *LSH CO v. AXA Equitable Life Insurance Company*, No. 18-CV-2111, AXA has filed a motion to dismiss, which will be fully briefed by July 31, 2018. At a March 9, 2018 conference, counsel for LSH agreed that it would be bound by the Court's decision on AXA's instant motion for reconsideration with respect to its own Section 4226 claim, and the Court granted leave to the parties to file supplemental briefing on the Section 4226 claim in LSH's complaint. (*See* Docket No. 198, at 10-11; *see also* Docket Nos. 200, 208). Accordingly, the Court's holding applies to AXA's motion to dismiss in the *LSH* case.

7