```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IN RE:                                                            :
                                                                  :
AXA EQUITABLE LIFE INSURANCE COMPANY                              :    16-CV-740 (JMF)
COI LITIGATION                                                    :
                                                                  :    OPINION AND ORDER
This Document Also Relates to 18-CV-2111                          :
                                                                  :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this litigation, familiarity with which is presumed, life insurance policyholders bring claims against Defendant AXA Equitable Life Insurance Company ("AXA")[1] arising from an increase in the "cost of insurance" or "COI" — a monthly charge deducted from the value of a policyholder's account — on a subset of universal life insurance policies. Plaintiffs principally allege that the increase in COI violated the terms of their insurance policies and that AXA issued policy illustrations, or documents depicting the performance of a given policy under various assumptions, that were false or misleading. Two years ago, the Court granted Plaintiffs' motion for class certification and certified (1) a nationwide Policy-Based Claims Class consisting of "all individuals who, on or after March 8, 2016, owned AUL II policies that were issued by AXA and subjected to the COI rate increase announced by AXA on or about October 1, 2015"; (2) a nationwide Illustration-Based Claims Class based on New York Insurance Law Section 4226 ("Section 4226"), consisting of "all individuals who, on or after March 8, 2016, owned an AUL

---

[1] In January 2020, AXA rebranded itself as "Equitable." *See* Equitable, *Announcing Equitable*, https://equitable.com/news/2020/announcing-equitable-a-new-day-for-160-year-old-financial-services-company. Because the conduct at issue occurred before the rebranding, and for consistency with this Court's prior opinions in this action, the Court will continue to refer to the company as "AXA."

II policy unaccompanied by a Lapse Protection Rider that was issued by AXA and subjected to the COI rate increase announced by AXA on or about October 1, 2015"; and (3) a New York Illustration-Based Claims Sub-Class, based on New York's General Business Law Section 349 ("Section 349"), consisting of "all members of the Illustration-Based Claims Class who reside in New York." *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *8, *15-16 (S.D.N.Y. Aug. 13, 2020) (ECF No. 403) ("*Class Cert. Op.*").[2] In a lengthy opinion filed a few months ago, the Court resolved cross-motions for summary judgment and related motions to preclude the testimony of certain experts, largely (although not entirely) denying them all. *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2022 WL 976266 (S.D.N.Y. Mar. 31, 2022) (ECF No. 596) ("*SJ Op.*").

AXA now seeks to revisit several of the Court's rulings. Most significantly, AXA moves for reconsideration of the Court's holding in its recent opinion that Wells Fargo, the Registered Owner of many of the life insurance policies at issue, has standing to pursue the illustration-based claims. *See SJ Op.*, 2022 WL 976266, at *17. In particular, AXA argues that the Court erred in concluding that Wells Fargo has standing to pursue illustration-based claims because there has been no valid assignment of the beneficial owners' illustration-based claims and Wells Fargo, acting as a securities intermediary, was not itself injured by the illustrations. *See* ECF No. 609 ("Def.'s Mem."); ECF No. 630 ("Def.'s Reply"). Class Plaintiffs and Individual Plaintiffs LSH Co. and Wells Fargo, N.A. (together, the "LSH Plaintiffs") oppose AXA's motion. *See* ECF No. 629 ("Pls.' Opp'n"). Upon reflection, the Court concludes that AXA is correct and that Wells Fargo lacks standing to bring the illustration-based claims. *See Henslee v. Union Planters Nat. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting) ("Wisdom too often

---

[2]   Unless otherwise stated, all citations are to Docket No. 16-CV-740.

never comes, and so one ought not to reject it merely because it comes late."). Accordingly, and for the reasons discussed below, AXA's motion for reconsideration on that score is GRANTED, and the illustration-based claims brought by Wells Fargo as securities intermediary are dismissed for lack of Article III standing.

AXA also seeks to revisit several aspects of the Court's class certification opinion and related rulings. First and foremost, AXA argues that because Wells Fargo lacks standing and is the Registered Owner of a substantial number of policies in the certified Illustration-Based Claims Class, the class should be decertified. Def.'s Mem. 12. Second, AXA independently argues that the New York Illustration-Based Claims Sub-Class must be decertified because it fails to meet the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure — whether or not Wells Fargo remains a class member. *Id.* at 22. Finally, AXA moves for leave to pursue discovery of absent class members concerning the individual issues raised by their illustration-based claims. *Id.* at 23. The Court shares some views on these requests, but ultimately reserves judgment pending further briefing in light of the Court's new decision on standing.

## DISCUSSION

**A. Motion for Reconsideration**

The Court begins with the core issue: AXA's motion for reconsideration of the Court's decision regarding Wells Fargo's standing. "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011). The standards governing motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 are the same and are meant to "ensure the finality of decisions and to prevent the practice of a

losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012).  The primary grounds justifying reconsideration are an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  That is, reconsideration will generally be denied unless "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Medisim*, 2012 WL 1450420, at *1.  Ultimately, however, "[a] district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000); *accord Yang v. An Ju Home, Inc.*, No. 19-CV-5616 (JPO), 2021 WL 1044160, at *1 (S.D.N.Y. Feb. 2, 2021).

AXA seeks reconsideration on the ground that the Court erred in concluding that Wells Fargo has standing to pursue the illustration-based claims because (1) Plaintiffs have not shown a valid assignment of any claims to Wells Fargo and (2) Wells Fargo cannot demonstrate its own injury traceable to the illustrations.  Def.'s Mem. 2.  Admittedly, it is questionable whether AXA meets the "strict" standard for reconsideration because it does not really identify any "controlling decisions or data that the court overlooked." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021).  That said, the Court will revisit the merits of the issue for two reasons.  First, "Article III standing is jurisdictional, so it is not subject to waiver and may be challenged at any stage in the litigation." *City of Providence, R.I. v. Bats Glob. Markets, Inc.*, No. 14-CV-2811 (JMF), 2022 WL 902402, at *15 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks and citations omitted).

Indeed, it is well established that a court has an obligation to inquire, if need be *sua sponte*, "whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977).  Second, the issue of Wells Fargo's standing to pursue the illustration-based claims was addressed only cursorily in the parties' summary judgment briefing.  In fact, although AXA now argues that Wells Fargo's lack of standing is a critical issue that requires decertification of the entire Illustration-Based Claims Class, it devoted just two pages to the issue in its fifty-nine-page motion for summary judgment on the class claims.  *See* ECF No. 463, at 34-35.  The issue received even less attention in AXA's fifty-page motion for summary judgment as to LSH Plaintiffs' claims — a mere paragraph.  *See* ECF No. 467, at 30-31.  For these reasons, the Court concludes that revisiting the issue of Wells Fargo's standing is appropriate.

Turning to the merits of the issue, the Court concludes that Wells Fargo lacks standing to sue for the illustration-based claims.  As an initial matter, Plaintiffs do not, and cannot, contend that Wells Fargo has standing based on an assignment of the beneficial owners' claims.  *See* Pls.' Opp'n 9 (LSH Plaintiffs conceding that "the operative agreements do not contain an explicit claim assignment"); *id.* at 14-15 (Class Plaintiffs explaining that "Wells Fargo, as the policy owner and securities intermediary, does not require an 'assignment' to bring claims related to overcharges on the policies it owns"); *id.* at 20 ("[T]he standing of Wells Fargo, and similar owners, does not depend on an 'assignment.'").  Instead, Class Plaintiffs and the LSH Plaintiffs argue that Wells Fargo has standing for another reason — although, notably, the two sets of Plaintiffs do not seem to agree as to what that reason is.  On the one hand, Class Plaintiffs assert that Wells Fargo suffered its own injury that is sufficient to confer standing.  *See id.* at 13.  On the other hand, the LSH Plaintiffs insist that Wells Fargo has standing because it may rely on the

5

injuries of LSH Co. and other beneficial owners. *See id.* at 7-8. Neither theory withstands close scrutiny.

The Court begins with Class Plaintiffs' theory that Wells Fargo was itself injured. Class Plaintiffs base that theory, in the first instance, on the fact that Wells Fargo was "the holder of the policy account" from which the excess fees were allegedly deducted. *Id.* at 13 (emphasis omitted). But "while ownership and possession generally may provide evidence of standing, it is the injury to the party seeking standing that remains the ultimate focus." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999). Applying that principle, courts have "denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else," because "[s]uch owners do not themselves suffer an injury when the property is taken." *Id.*; *see also Calvo v. City of New York*, No. 14-CV-7246 (VEC), 2017 WL 4231431, at *4 (S.D.N.Y. Sept. 21, 2017) (denying certification for lack of standing where class definition included "registered owners" who "lack[ed] a true ownership interest in the vehicles that were seized"). At bottom, that is the situation here: Wells Fargo holds each policy account in a purely ministerial capacity; it is the beneficial owner who actually incurred the financial harm, if any. *See* N.Y. U.C.C. Law § 8-102(14) (ii) ("'Securities intermediary' means . . . a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."); *id.* § 8-503(a) ("[A]ll interests in that financial asset held by the securities intermediary . . . are not property of the securities intermediary, and are not subject to claims of creditors of the securities intermediary."); ECF No. 460-113, at 5 (LSH Co.'s agreement with Wells Fargo, providing that it is "the only part[y] entitled to exercise the rights that comprise any cash, financial asset or proceeds thereof," including the insurance policies, held in the securities intermediary account). Indeed, Plaintiffs concede that Wells Fargo

did not suffer any financial loss as a result of the alleged overcharges. *See* ECF No. 495 ¶ 102 (undisputed that Wells Fargo's fees as securities intermediary were not affected by the COI Increase); ECF No. 496-17, at 349-50 ("[O]bviously LSH [Co.] was the one with the economic stake in the policies."). That dooms Class Plaintiffs' argument based on Wells Fargo's title to the accounts from which the relevant fees were deducted. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 576 (S.D.N.Y. 2009) (noting that there is an "importan[t] . . . distinction between having title to the claim at issue and having title to the [property] from which the claims derive").

Contrary to Plaintiffs' suggestions, *see, e.g.*, Pls.' Opp'n 15, the fact that Wells Fargo has standing to assert contract-based claims does not suggest otherwise. It is well established that "a plaintiff must demonstrate standing for each claim [it] seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). And here, there is a fundamental difference in the nature of the claims and the injuries for which relief is being sought. As AXA itself puts it, "Wells Fargo has Article III standing to sue for breach because it is the counterparty to whom [AXA] promised contract performance, and in a contract case, the failure to perform is *itself* an injury-in-fact, regardless of any economic loss." Def.'s Reply 2; *see also, e.g.*, *Culwick v. Wood*, 384 F. Supp. 3d 328, 339 (E.D.N.Y. 2019) (holding that breach of contract alone is an injury sufficient to confer standing); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 766 (8th Cir. 2020) ("A party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged."), *cert. denied*, 141 S. Ct. 2551 (2021).[3] Thus it is that other courts

---

[3] In the wake of *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), some courts have concluded that breach of contract, in the absence of some other injury, does not give rise to standing. *See, e.g.*, *Patel v. Univ. of Vermont & State Agric. Coll.*, No. 20-CV-61, 2021 WL 4523683, at *5 (D. Vt. Oct. 1, 2021); *Svenson v. Google Inc.*, No. 13-CV-04080 (BLF), 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016). But the weight of authority supports the parties' position here. *See,*

have found securities intermediaries have standing to bring breach of contract claims where, as here, they were party to the contract at issue. *See, e.g.*, *Advance Tr. & Life Escrow Servs., LTA v. Reliastar Life Ins. Co.*, No. 18-CV-2863 (DWF) (BRT), 2022 WL 911739 at *6 (D. Minn. Mar. 29, 2022). By contrast, the illustration claims are not based on a contract — much less a contract to which Wells Fargo is a party.

Next, Class Plaintiffs argue that Wells Fargo has standing because it "was, at least indirectly, exposed to misleading illustrations that failed to divulge AXA's pre-planned COI increase." Pls.' Opp'n 13. Indeed, Class Plaintiffs suggest that the Court already blessed this theory in its class certification ruling when it held that a plaintiff could prevail on a claim under Section 4226 even if it learned of the misrepresentation only "indirectly" and stated that this conclusion was "not inconsistent with the injury-in-fact requirement for Article III standing." *Id.* at 10-11; *see Class Cert. Op.*, 2020 WL 4694172, at *10-11. But these arguments misapprehend the nature of the issue and the gravamen of the Court's prior discussion. At the class certification stage, the Court's focus was on the elements of a Section 4226 claim; it did not address whether Plaintiffs in this case generally, or Wells Fargo specifically, could prove injury sufficient to support standing. Underscoring the point that indirect exposure and injury are distinct concepts, the Court summarized that, "to establish a claim under Section 4226," Plaintiffs had to prove *both* that "the claimants [had] received" a document containing an actionable misrepresentation "or learned of the misrepresentation, directly or indirectly" *and* that

---

*e.g.*, *Culwick*, 384 F. Supp. 3d at 339 ("Breach of contract is surely . . . [a concrete harm]" because it "ha[s] a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." (internal quotation marks omitted)); *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 331 (1st Cir. 2020); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 571 (N.D. Ill. 2020); *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020).

"the claimants were . . . injured" by AXA's failure to abide by its representation. *Class Cert. Op.*, 2020 WL 4694172, at *12; *see also* Sept. 22, 2020 Transcript (ECF No. 438), at 13 (discussing the elements of a Section 4226 claim in the context of Plaintiffs' proposed redefinition of the Illustration-Based Claims Class); ECF No. 440 (same); ECF No. 443 (same). Put simply, whether or not Wells Fargo was exposed, directly or indirectly, to the illustrations does not speak to whether it has standing; indeed, Wells Fargo would lack standing to sue even if it had been *directly* exposed to the illustrations if it has no "concrete stake in this lawsuit." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1619 (2020); *cf. Robainas v. Metro. Life Ins. Co.*, No. 14-CV-9926 (DLC), 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (holding that whether or not the plaintiffs had a cause of action under Section 4426, they lacked an injury sufficient to satisfy Article III), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41, 45 (2d Cir. 2017) (summary order) ("[Plaintiffs] cannot rely solely on a violation of New York Insurance Law Sections 4226(a)(4) and (d) in order to satisfy Article III's injury-in-fact requirement.").

Finally, Class Plaintiffs rely on *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370 (2d Cir. 2021), which held that "the prohibition on raising another's legal rights is a *prudential* rule of standing and distinct from the requirements found within Article III itself," *id.* at 381-82; *see* Pls.' Opp'n 12. In fairness, the Court itself relied on *Fund Liquidation Holdings* in its summary judgment decision. *See SJ Op.*, 2022 WL 976266, at *17 (citing *Fund Liquidation Holdings* for the proposition that "pre-suit assignments of a claim do not raise constitutional standing issues, but should be analyzed instead as an issue of capacity to sue"). The Second Circuit's language, however, does not mean that the issue of an assignee's standing is itself prudential. Instead, the issue of third-party standing is "distinct from the requirements found within Article III," which still must be met. *Fund Liquidation Holdings*, 991 F.3d at 380-

9

81. In *Fund Liquidation Holdings*, the dissolved funds were plainly asserting their own injuries based on the defendants' manipulation of benchmark interest rates. *Id.* at 375. The question was whether Fund Liquidation Holdings, to which the funds had assigned their claims prior to the suit, could pursue the claims given that, when the suit was filed, the funds no longer existed. The Court determined that that question, not the threshold question of Article III standing, was a prudential one. That holding does not help Wells Fargo because Wells Fargo has not established its own injury sufficient to confer standing.

As noted, the LSH Plaintiffs do not join the Class Plaintiffs in arguing that Wells Fargo has standing based on its own injuries; instead, the LSH Plaintiffs contend that Wells Fargo has a form of derivative standing. Pl.'s Opp'n 7-9. But their arguments fare no better. The LSH Plaintiffs point to the Second Circuit's statement in *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), that "courts historically have permitted trustees to bring suits to benefit their trusts; guardians ad litem to bring suits to benefit their wards; receivers to bring suit to benefit their receiverships; assignees in bankruptcy to bring suit to benefit bankrupt estates; and executors to bring suit to benefit testator estates," *id.* at 109-10 (cleaned up) (quoting *Sprint Comm'cns Co. L.P. v. APCC Servs. Inc.*, 554 U.S. 269, 287-88 (2008). "These circumstances," LSH Plaintiffs contend, "do not involve 'assignments.'" Pls.' Opp'n 7. That much is true, but it does not aid Plaintiffs because the relationship between Wells Fargo and the beneficial owners of the policies does not fall within any of the categories recognized in *W.R. Huff*. Moreover, Wells Fargo satisfies neither of the prerequisites for third-party standing: "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff*, 549 F.3d at 109; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d at 576. The *W.R. Huff* Court held that an "investment

10

advisor-client relationship is not the type of close relationship courts" require for third-party standing, 549 F.3d at 110, and it is difficult to see why a securities intermediary-beneficial owner relationship would be different.  And the beneficial owners "are relatively sophisticated parties with a demonstrated capacity to protect their own interests in the absence of [Wells Fargo's] intervention." *Id.*  Indeed, LSH Co. itself is a plaintiff alongside Wells Fargo in LSH Plaintiffs' Complaint.  *See LSH Co. v. AXA Equitable Life Ins. Co.*, 18-CV-2111, ECF No. 58 ¶ 5.

Finally, the LSH Plaintiffs argue that Wells Fargo's agreement with LSH Co., which "envisions Wells Fargo bringing suit on behalf of LSH," and transfers ownership of the policies to Wells Fargo, is sufficient to confer standing.  Pls.' Opp'n 8-9; *see* ECF No. 460-113.  Not so.  The Second Circuit has made plain that "[a] provision by which one person grants another the power to sue on and collect on a claim . . . is not the equivalent of an assignment of ownership" of the claim.  *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997).  Therefore, "[a]n assignor's grant of . . . the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings may validly create a power of attorney, but that language would not validly assign a claim," and would not confer standing to sue, "because it does not purport to transfer title or ownership" of the claim.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 418 (2d Cir. 2015) (internal quotation marks and citations omitted).  For similar reasons, the LSH Plaintiffs' reliance on *Natixis Real Est. Cap. Tr. 2007-HE2 v. Natixis Real Est. Holdings, LLC*, 149 A.D.3d 127 (1st Dep't 2017), falls short.  The securities administrator there had standing because the trusts' pooling services agreement assigned it the power to enforce the sales contracts.  *Id.* at 133.  That decision is consistent with Wells Fargo's undisputed standing to bring contract claims here, but it does not speak to whether Wells Fargo has standing to bring the illustration-based claims.

(Moreover, the case was brought in state court, where Article III's requirements do not apply. And in any event, the decision is an isolated decision by a lower state court — hardly a firm foundation for Plaintiffs' arguments.)

In sum, upon further reflection and with the benefit of more thorough briefing on the issue, the Court concludes that Wells Fargo, as securities intermediary for the beneficial owners of the policies, lacks constitutional standing to pursue the illustration-based claims.

## B. Motion for Class Decertification

Having concluded that Wells Fargo lacks standing to pursue the illustration-based claims, the Court must consider the effect, if any, of that conclusion on class certification. AXA argues the Court must decertify the Illustration-Based Claims Class because Wells Fargo and other securities intermediaries hold title to a significant percentage of the policies in the class, Def.'s Mem. 14, and because individual questions are likely to predominate the standing inquiry as to the remaining members, *id.* at 16-17. Modification of the class, AXA argues, would be improper because defining the class to include only "injured" Registered Owners would impermissibly create a "fail-safe class," *id.* at 20-21, defined such that "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment," *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012). Finally, AXA argues that the Named Plaintiffs, who are not securities intermediaries, would not be typical of any redefined class. Def.'s Mem. 21-22.

Under Rule 23, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). More specifically, a court "must ensure that a certified class satisfies Rule 23 throughout the litigation, and possess[es] the authority to alter or decertify the class if that is no longer the case." *Jin v. Shanghai Original,*

12

*Inc.*, 990 F.3d 251, 262 (2d Cir. 2021) (internal quotation marks and citations omitted). "Indeed, because the results of class proceedings are binding on absent class members, the district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (internal quotation marks and citations omitted). Notably, and contrary to Plaintiffs' assertion, Pls.' Opp'n 17, a "significant intervening event" is not a prerequisite for decertification or modification of a class. *See Jin*, 990 F.3d at 262. Instead, a plaintiff retains "the burden to demonstrate that [the Rule 23] requirements [a]re satisfied." *Mazzei*, 829 F.3d at 270. At the same time, a court must proceed cautiously and consider "possible prejudice to members of a class who failed or were unable to take independent steps to protect their rights precisely because they were members of the class." *Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984). "[I]t is an extreme step to dismiss a suit simply by decertifying a class," especially "where a potentially proper class exists and can easily be created" through the less drastic measure of modification. *Id.* (internal quotation marks omitted).

Measured against these standards, and mindful that "no class may be certified" — or, presumably, remain certified — "that contains members lacking Article III standing," *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), AXA makes a forceful argument for decertification of the Illustration-Based Claims Class. After all, Wells Fargo and similarly situated securities intermediaries are the Registered Owners of as much as sixty-nine percent of the policies at issue. Def.'s Mem. 14. Moreover, AXA is probably right that redefining the class to include only "injured" Registered Owners would not solve the problem. *Id.* at 20-21. Modifying the class in that manner might not be a traditional "fail-safe" class because even injured Registered Owners might lose on the merits of their Section 4226 claims and be bound

by an adverse decision.  *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 491-93 (S.D.N.Y. 2009) (certifying a class defined to include only "investors who were damaged"); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-CV-09764 (KPF) (SN), 2018 WL 739580, at *8 (S.D.N.Y. Jan. 10, 2018) (rejecting the argument that a class defined to include on "injured" members was a fail-safe class).  Nevertheless, a class defined by injury would likely "require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation." *Ruiz v. Citibank, N.A.*, No. 10-CV-5950 (KPF) (RLE), 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39 (2d Cir. 2017) (summary order).  That is, if the class was redefined to include only injured Registered Owners, "the fact-finder would have to look at every class member's transaction documents to determine who did and who did not have a valid claim," which would defeat the purposes of class certification.  *In re Petrobras Sec.*, 862 F.3d 250, 274 (2d Cir. 2017) (cleaned up) (vacating class certification for failure to satisfy the predominance requirement).

      Conspicuously, Plaintiffs fail to offer much in the way of a rejoinder to these arguments, choosing instead to put all of their eggs in the standing basket.  *See* Pls.' Opp'n 19-20.  Under these circumstances, the Court would be on firm ground deeming Plaintiffs to have forfeited any opposing arguments and, on that basis alone, decertifying the class.  S*ee AT&T Corp. v. Syniverse Techs., Inc.*, No. 12-CV-1812 (NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (finding that plaintiff's "silence concede[d] the point" where it failed to discuss opponent's argument in its opposition brief).  But given the Court's responsibility to safeguard the rights of absent class members and the fact that decertification is "an extreme step," especially if "a potentially proper class exists and can easily be created," *Woe by Woe*, 729 F.2d

at 107, the Court will not take that step here.  Instead, the Court will proceed with caution and give the parties an opportunity to reflect on the implications of its new ruling about Wells Fargo's standing and address the questions of decertification and modification further.

Finally, AXA separately argues that the New York Illustration-Based Claims Sub-Class must be decertified because it does not meet the numerosity requirement.  Def.'s Mem. 22-23.  As this issue could be affected by the fate of the class as a whole, the Court reserves judgment on it too.  That said, the Court is not presently persuaded that decertification of the New York Sub-Class is necessary.  The numerosity inquiry focuses on whether the class is so large "that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), a threshold the New York Sub-Class fails to cross, Def.'s Mem. 23; *see also* Pls.' Opp'n 22-23. .  But there is "no magic minimum number" to establish numerosity, *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013), *aff'd*, 568 F. App'x 78 (2d Cir. 2014) (summary order), and "[d]etermination of practicability depends on all the circumstances surrounding a case," *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "Relevant considerations include," among others, "judicial economy arising from the avoidance of a multiplicity of actions."  *Id*.  Here, given the overlap in the elements of the New York Sub-Class' Section 349 claims, and the Section 4226 claims of the nationwide class, judicial economy may well be served by class adjudication.  *See also, e.g.*, *Hoeffner v. D'Amato*, No. 09-CV-3160 (PKC) (CLP), 2019 WL 1428367, at *5-7 (E.D.N.Y. Mar. 29, 2019) (certifying a subclass of seventeen members).

## CONCLUSION

For the foregoing reasons, AXA's motion for reconsideration on the question of whether Wells Fargo has standing, as securities intermediary, to bring illustration-based claims is GRANTED. The Court reserves judgment on the question of whether to decertify or modify the class.[4] Unless and until the Court orders otherwise, Class Plaintiffs shall file a memorandum of law, not to exceed ten pages, by **August 17, 2022**, addressing the implications of the Court's ruling on Wells Fargo's standing, including whether decertification or modification of the class is warranted. AXA shall file any response, not to exceed ten pages, by **August 31, 2022**. That said, the parties should promptly confer and, if they believe that there is a better way to proceed in light of the Court's ruling, seek appropriate relief by letter motion.

The Clerk of Court is directed to terminate Docket No. 16-CV-740, ECF No. 608 and Docket No. 18-CV-2111, ECF No. 269.

SO ORDERED.

Dated: July 29, 2022
      New York, New York

                                                 JESSE M. FURMAN
                                            United States District Judge

---

[4] The Court also reserves judgment on AXA's request for discovery from absent class members, *see* Def.'s Mem. 23-25, as that request may be affected, if not mooted, by resolution of the decertification motion. AXA shall file any renewed motion for absent class member discovery within one week of the Court's resolution of the decertification motion.